## Gray, Appellant, *v.* Grace Contracting Company.

*Negligence—Master and servant—Employee moving rails—Unnecessarily dangerous position—Assumption of risk—Contributory negligence—Nonsuit.*

In an action by an employee against a contracting company engaged in doing grading work, a compulsory nonsuit was properly entered where it appeared that the plaintiff was moving by means of horses one of the rails used by a steam shovel; and was injured by reason of the rail swinging to one side and striking him, immediately after the horses were started, and that while plaintiff contended that defendant was guilty of negligence by reason of its foreman having required him against his will and judgment to drive both horses together in doing the work, when he claimed that by "singling" them the danger might have been avoided, it further appeared that plaintiff assumed an unnecessarily dangerous position when there were several other positions which he could have occupied in safety, and that he was thoroughly familiar with the work he was doing.

Argued April 26, 1915. Appeal, No. 323, Jan. T., 1914, by plaintiff, from judgment of C. P. Crawford Co., Sept. T., 1913, No. 111, refusing to take off compulsory nonsuit in case of M. K. Gray v. The Robert Grace Con-

tracting Company.   Before MESTREZAT, ELKIN, STEW-
ART, MOSCHZISKER and FRAZER, JJ.   Affirmed.

Trespass for personal injuries.

The facts appear in the following opinion by PRATHER,
P. J., sur plaintiff's motion to take off compulsory non-
suit:

The defendant company had a contract with the Nyp-
ano Railroad Company to do certain grading necessary
for the construction of a double track system.   Plaintiff
on the day of the accident was engaged by defendant com-
pany to move the iron rails which formed the temporary
track for its steam shovel.   The moving consisted of
drawing the rails backward along the temporary track
for eight or ten feet and then hitching to the front ends
to draw them in front of the steam shovel.

Plaintiff was driving his own horses.   He hitched to
the first rail by means of a rope three or four feet long,
and when he started his team, the rail swung to one side
and crushed the bones of one leg, which injury resulted
in its amputation.

The negligence complained of is that plaintiff was re-
quired by the foreman against his will and judgment to
drive two horses in doing this work, when by "singling"
his horses, he might have been at the horse's head, and
thereby avoided the danger and escaped the injury.

Plaintiff testified that his horses were pulling slightly
at an angle from the line of the rail; that the off horse
was walking about a foot from the end of the ties; the
plaintiff himself was walking slightly to the rear of his
horses and slightly to the left of the near horse.   It ap-
pears undisputed that there was plenty of room to the
left of plaintiff's path where he might have walked in
safety in driving his team.

There is no suggestion, either by inference or evidence
that he might not have walked to the right of the rail
with perfect safety.

It is quite apparent that with some three feet between

the end of the rail and the double tree, he might have had perfect control of a manageable team by a position two or three feet to the rear of the near horse.

It seems that any one of these three positions as driver might have been adopted by plaintiff with absolute safety.

Some evidence was offered to the effect that a driver could not manage his team if he stood farther to the left in driving. This evidence was of doubtful competency, particularly when we consider that the rail was only to be moved from six to ten feet; when the plaintiff urges that one horse ought to have handled the load, and when plaintiff was driving his own team which was so quiet that it practically required no managing by lines. From his testimony, we quote: "If you would say whoa, they would stop any time; they was rather mild; when you would tell them to stop, they would stop quick."

The fact that defendant company's foreman directed plaintiff to hitch to the rail with a team instead of one horse, does not convict defendant of negligence, particularly when plaintiff in the exercise of ordinary care might have avoided the injury that befell him.

Our conclusion is that under the undisputed facts plaintiff assumed the risk incident to his employment; that he might have avoided the injury by the exercise of due care, and lastly, that there is no evidence of defendant's negligence. It follows that the motion to take off compulsory nonsuit should be refused.

The court entered a compulsory nonsuit which it subsequently refused to take off. Plaintiff appealed.

*Error assigned* was in refusing to take off the nonsuit.

*Frank J. Thomas,* for appellant.

*Richard W. Martin,* with him *George F. Davenport,* for appellee.

PER CURIAM, May 10, 1915:

The judgment is affirmed on the opinion of the learned court below refusing to take off the compulsory nonsuit.